IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

BONNIE CARROLL,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )         Case No. CV 02-TMP-1086-NW
                                         )
KEMPER NATIONAL SERVICES, INC.,          )
*et al.*,                                )
                                         )
            Defendants.                  )

## MEMORANDUM OPINION REGARDING ATTORNEYS' FEES AND OTHER RELIEF

This cause is before the court on the plaintiff's motion for an award of attorneys' fees, prejudgment interest, and reimbursement of medical insurance premiums incurred by her. The motion was filed May 14, 2004 (Doc. 52), and it has been fully briefed. The parties have submitted the motion to the court on the basis of the briefs and exhibits offered by them.

### Background

A brief description of the background and history of this case is useful. Plaintiff filed suit against defendant under the Employee Retirement Income Security Act (ERISA) seeking an award of both short-term and long-term disability benefits under her employer's plans. Plaintiff's employer was BellSouth Telecommunications, Inc., which provided self-funded short-term and long-term disability plans. The plans were administered by defendant Kemper pursuant to a contract with BellSouth, and Kemper served as the plans' fiduciary with express discretion and authority to review

all claims, determine the eligibility of participants for plan benefits, and construe the plans' terms. As part of its agreement with BellSouth, Kemper expressly agreed to adjudicate claims and appeals in accordance with the written claim review procedures promulgated by BellSouth.

The summary plan description of the short-term disability ("STD") plan provided that an employee of BellSouth is eligible for short-term disability benefits after he or she has completed six months of credited service and

> You are disabled and unable to perform any type work as a result of a physical or mental illness or an accidental injury. Any type work includes your regular job with or without accommodations, any other participating company job (regardless of availability) with or without accommodations, or temporary modified duties.

(Plaintiff's Exhibit 2, p. 1). The actual plan document itself similarly defined disability as follows:

> "Disability" means a medical condition which makes a Participant unable to perform any type of work as a result of a physical or mental illness or an accidental injury. "Any type of work" includes the Participant's regular job with or without accommodations, any other Participating Company job (regardless of availability) with or without accommodations, or temporary modified duties. "A Participating Company job" is any job within a Participating Company; or any job outside a Participating Company which is comparable in skills and function. A Participant subject to a Disability is referred to as being "Disabled."

Under the long-term disability ("LTD") plan, a participant became eligible only after he or she had been approved for and had received benefits under the STD plan for 52 weeks and he or she still was disabled. The plan document stated:

"Disability" means a physical or mental illness, whether work related or non work related which makes a participant who has been covered under the Short Term Disability Plan for 52 weeks, unable to perform any type of work other then one which pays less than half of his base pay at the time his benefits under the Short Term Disability Plan began. Effective January 1, 1993, for purposes of the definition of "disability" a participating earning potential shall be determined using potential jobs in the community. The earning test shall take into account a participant's functional capacities, background (education, training, work experience), transferable skills, and the participant's age. The geographic area search for jobs will be within a 35 mile radius of a participant's home and/or prior work location. A participant subject to a disability is referred to as "disabled."

In a memorandum opinion and order entered August 28, 2003, the court concluded that the claims administrator, Kemper, had applied the wrong standard for determining whether the plaintiff was disabled within the meaning of the plans. The court rejected Kemper's argument that the standard for determining disability provided by the plans was whether the claimant was disabled from performing "any work of any kind whatsoever for any employer." Rather, quoting the language of the plans, the court found that the correct standard for determining disability was whether the claimant was unable to perform a job with "comparable skills and functions to that which the claimant performed for BellSouth." The court also found that Kemper's use of the wrong standard was unreasonable, arbitrary, and capricious in light of the language of the plans, and remanded the action to the administrator for reconsideration of plaintiff's claims in light of the correct standard stated by the court. Upon such reconsideration, plaintiff was found by Kemper to be entitled to both short-term and long-term disability benefits, which are now being paid.

## Issues in Present Motion

The instant motion raises several issues relating to additional relief being sought by the plaintiff. She seeks an award of attorneys' fees, prejudgment interest for the benefit payments not paid until after her reconsideration, and reimbursement for medical insurance premiums she was forced to bear during the time she was being denied disability benefits. Defendants have responded that the court should not exercise its discretion to award an attorneys' fee and that plaintiff is not legally entitled to either an award of prejudgment interest or reimbursement of medical insurance premiums, as neither are in the nature of equitable relief available under ERISA.

## Discussion

### I. Attorneys' Fees and Costs

The parties agree that the court may, in its discretion, award attorneys' fees to either party in an ERISA action. See 29 U.S.C. § 1132(g)(1); Freeman v. Continental Insurance Co., 996 F.2d 1116 (11th Cir. 1993). That discretion is guided by the five so-called "Iron Workers factors," first expounded by the old Fifth Circuit Court of Appeals in the case of Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir. 1980)[1]. The Eleventh Circuit Court of Appeals has described these factors as follows:

> Our cases have enumerated five factors for the district court to consider when deciding a motion for attorney's fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of

---

[1]    In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent the decisions of the old Fifth Circuit Court of Appeals rendered before October 1, 1981.

attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) the relative merits of the parties' positions. McKnight v. Southern Life And Health Ins. Co., 758 F.2d 1566 (11th Cir. 1985)(citing Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir. 1980)).  We have recognized that "[no] one of these factors is necessarily decisive, and some may not be *apropos* in a given case, but together they are the nuclei of concerns that a court should address.... In particular types of cases, or in any individual case, however, other considerations may be relevant as well." Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co., Inc., 932 F.2d 1443, 1452 (11th Cir. 1991)(quoting Iron Workers, 624 F.2d at 1266).

Freeman v. Continental Insurance Co., 996 F.2d 1116, 1119 (11th Cir. 1993); see also Wright v. Hanna Steel Corp., 270 F.3d 1336 (11th Cir. 2001).

Examining each of these factors, the court is persuaded that plaintiff should be awarded at least some part of the attorneys' fees she incurred in prosecuting this action.  Factors two and five assess the relative merit and fault of the parties.  As written previously, the court found that the defendants' use of an "any work" standard was inconsistent with the plan language and was arbitrary and capricious. Plaintiff's position in the litigation was relatively stronger than that of the defendants in this regard.  Although defendants now argue that the court did not find that they acted in "bad faith," the court did find that their actions were arbitrary and capricious.  The point at which something arbitrary and capricious becomes something done in "bad faith" is a metaphysical subtlety that eludes the court.  But, in any event, the Eleventh Circuit has made clear that the first factor addresses culpability *or* bad faith; they need not be one and the same.  In Wright v. Hanna Steel Corp., 270 F.3d 1336, 1345 (11th Cir. 2001), the court of appeals itself emphasized the word "or" to

distinguish between "culpability" and "bad faith" as two different concepts.[2] Thus, there is no requirement in this circuit that bad faith exist as a precondition to finding an entitlement to attorneys' fees under § 1132(g)(1). It is sufficient simply to find that defendants' position was weaker than the plaintiff's to a degree that made their conduct culpable.

On the second factor, defendants agree that they are capable of paying an award of fees.

The court also finds that an award of fees will deter similar conduct by others. Here, the defendants essentially disregarded their own definition of disability in favor of a narrow, harsh "any work" standard that effectively deprived plaintiff and, undoubtedly, many others of disability benefits to which they were entitled. Only by awarding attorneys fees to successful plaintiffs can the incentive for doing so be removed from the defendants. As long as they can force plan participants to litigate a fairly straightforward definition of disability, they can deter or deny many valid disability claims. The incentive for doing so is lost, however, if they must also bear the cost of losing that litigation.

Finally, for the same reasons just expressed, plaintiff's lawsuit may have a salutary effect for other plan participants. It may cause the defendants to re-think their "any work" standard of disability or, at the very least, it will offer precedent for a more complete and realistic reading of the plan definition. Although plaintiff did not enter this lawsuit with the goal of assisting other disability claimants, that intention is not necessary. See Wright v. Hanna Steel Corp., 270 F.3d 1336 (11th Cir. 2001).

───────────────

[2]    "Under the clear law of this circuit, a district court may consider 'the degree of the opposing party's culpability *or* bad faith' when deciding whether to award fees. See Freeman, 996 F.2d at 1119 (emphasis added)...."  Wright v. Hanna Steel Corp., 270 F.3d 1336, 1345 (11th Cir. 2001). The italicization of the word "or" is in the original, indicating that the court itself wished to emphasize the distinction.

Thus, guided by these factors, the court concludes that the plaintiff is entitled to an attorneys' fee award. The analysis does not end there, however, because the defendants also challenge the amount of the fee claimed by plaintiff. The parties agree that the court must approach the setting of the fee award using the "lodestar" method of ascertaining the fee from the number of hours reasonably expended, multiplied by a reasonable hourly rate. Popham v. City of Kennesaw, 820 F.2d 1570 (11th Cir. 1987); Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988).

Defendants challenge a number of aspects in the "lodestar" calculation of fees claims by the plaintiff. First, they contend that plaintiff cannot recover attorneys' fees incurred in pursuing the administrative appeals process prior to the filing of litigation, and that such hours should be excluded from the fee calculation. Second, they contend that the hourly rates claimed by counsel, $250.00 per hour for Mr. Jenkins and $175.00 per hour for Mr. Medley, are too high and that their fees should be determined on the basis of $225.00 an hour rate for Mr. Jenkins and $150.00 an hour rate for Mr. Medley. Finally, defendants also question the reasonableness of some hours claimed by both attorneys and argue that these hours should be disallowed.

Notwithstanding the defendants' citation to cases in other circuits holding that administrative appeal/prelitigation fees are not recoverable under § 1132(g)(1), see Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999 (8th Cir. 2004); Peterson v. Continental Casualty Co., 282 F.3d 112, 118-21 (2d Cir. 2002); Rego v. Westvaco Corp., 319 F.3d 140, 149- 50 (4th Cir. 2003); Anderson v. Procter & Gamble Co., 220 F.3d 449, 452-56 (6th Cir. 2000)[3]; Cann v. Carpenters' Pension Trust

---

[3]     It should be noted that Anderson is distinguishable from the other cases. In Anderson the claimant prevailed during the administrative appeal and then filed suit for the sole purpose of seeking an award of fees and other expenses. It might be argued that under these circumstances there

Fund, 989 F.2d 313, 315-17 (9th Cir. 1993), the authority in the Eleventh Circuit seems to allow such

an award. Again, in Wright v. Hanna Steel, the court of appeals wrote:

> We similarly disagree with Hanna Steel's argument that the district court abused its
> discretion in awarding pre-litigation and litigation attorney's fees in this case. Hanna
> Steel presents no authority to support its contention that it was improper to award
> fees for both phases of the litigation. See Fed. R.App. P. 28(9)(A) (appellant's brief
> must contain "contentions... with citations to the authorities and parts of the record
> on which the appellant relies"); Flanigan's Enter. Inc. v. Fulton County, 242 F.3d
> 976, 987 n. 16 (11th Cir. 2001) (concluding that a plaintiff waived its argument by
> "fail[ing] to elaborate [on] or provide any citation of authority in support....") (citing
> Continental Tech. Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir.
> 1991)).

Wright v. Hanna Steel Corp., 270 F.3d 1336, 1345 (11th Cir. 2001). Although the court recognizes

that this is less than a ringing endorsement of the proposition that pre-litigation attorneys' fees may

be recovered in an action under ERISA, it nonetheless represents the court of appeals' allowing such

an award to stand. Moreover, although several circuits have rejected this idea, two Supreme Court

opinions arguably support such an award as well. See Pennsylvania v. Delaware Valley Citizens'

Council for Clean Air, 478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986); Sullivan v. Hudson,

490 U.S. 877, 109 S. Ct. 2248, 104 L. Ed. 2d 941 (1989) (both holding that attorneys' fees incurred

in *post*-litigation administrative proceedings were recoverable under fee-shifting statutes similar to

§ 1132(g)(1)).

Finally, the court also believes that the language of § 1132(g)(1) is not nearly so

unambiguous as portrayed by the courts of appeals finding that pre-litigation fees are not recoverable.

The statute reads, "In any action under this subchapter (other than an action described in paragraph

---

was not an "action" for an award of benefits within the meaning of ERISA and § 1132(g)(1) and,
thus, the fees were not recoverable.

(2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Beginning with the Ninth Circuit, several courts of appeals have concluded that the "plain language" of the statute limits the award of fees to those incurred during the "action." The introductory phrase "in any action" does not necessary mean, however, that only those services occurring during the "action" are recoverable; it may also mean nothing more than that an "action" within the provisions of ERISA must be filed before fees can be awarded for whatever services were provided either before or during the action. Once an ERISA "action" occurs, the fees are determined not by the strict time frame of the action, but by their logical relationship to the action, whether before or after the action is filed. <u>Anderson v. Procter & Gamble Co.</u>, 220 F.3d 449 (6th Cir. 2000), is an example of such a case. There, the claimant succeeded in obtaining her ERISA benefits during the administrative appeal and, therefore, had no need to file an action for an award of benefits within the meaning of ERISA. Absent the necessity of filing an action (because her administrative appeal was successful), there was no "action" at all within the terms of § 1132(g)(1) and she was not entitled to an award of fees.

Notwithstanding a strong trend in cases elsewhere to limit ERISA attorneys' fees only to those services rendered during the action, this court believes that authority in the Eleventh Circuit provides otherwise, and that once a claimant is compelled to institute an ERISA "action" for an award of benefits, she may seek recovery of whatever attorneys' fees are logically related to that action, whether they were incurred before or during the litigation. Exhaustion of administrative appeals and remedies is a precondition to filing suit under ERISA. Thus, fees incurred in that necessary phase prior to litigation are logically related to it.

Having carefully examined the exhibits and materials submitted for and in opposition to the fees claimed by plaintiff, the court cannot say that the hours claimed or the rates claimed are unreasonable. Plaintiff has submitted documentary evidence that one of her attorneys (Jenkins) expended 207.40 hours at an hourly rate of $250.00, while her other attorney (Medley) used 114.15 hours at the rate of $175.00 per hour. Plaintiff has presented affidavits establishing the reasonableness of the hourly rates claimed, and the defendants have offered no evidence to suggest that rates are not reasonable. The court's own experience with assessing and awarding attorneys' fees in other ERISA and federal statutory causes of action teaches that these rates are in line with those generally charged by attorneys of comparable experience in the Northern District of Alabama.

Defendants also challenge the reasonableness of some hours claimed by counsel, arguing that counsel failed to adequately detail some hours claimed and that others are simply excessive.[4] The court has examined the billing statements of counsel and find them to be adequately complete and detailed to enable an assessment of whether the hours were reasonably expended in connection with this action. Also, none of the hours claimed by counsel seem so excessive as to be unreasonable. Defendants argue that counsel spent an excessive amount of time preparing and pursuing this very motion for an award of fees. But given that defendants opposed the award of *any* fees to counsel, they cannot now be heard to argue that counsel spent too much time attempting to overcome defendants' opposition. It was their opposition that required counsel to prepare extensive briefs and exhibits in support of plaintiff's request.

_____

[4]   The court observes that the total of 321.55 hours claimed by counsel took place over a four-year period of time. On average, plaintiff's attorneys spent less than seven hours per month working on her case. That does not seem excessive.

With respect to attorneys' fees, the court can summarize its conclusions as follows: plaintiff is entitled to an award of fees under the court's discretionary authority provided by § 1132(g)(1); those fees can include services and time expended both before and during the litigation to the extent they are logically related to the litigation; that the hourly rates claimed by counsel are reasonable; and that the number of hours claimed by counsel are reasonable.  Accordingly, plaintiff shall be awarded a total attorneys' fee of $71,826.25.

Defendants also challenge several expense items claimed by counsel for plaintiff, including a daily travel *per diem* charged by Mr. Jenkins; expenses for supplies, stationery, photocopying, mailing, and shipping; and certain charges for on-line legal research services.  A preliminary question is whether § 1132(g)(1)'s allowance of the "costs of action" includes all reasonable litigation expenses or only those authorized by 28 U.S.C. § 1920[5] to be taxed as "costs."  Defendants

---

[5]   Title 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

-11-

apparently take the position that certain expenses claimed by plaintiff, including the costs of computer assisted legal research, are not taxable costs under § 1920 and, therefore, not allowable under § 1132(g)(1).

The only court of appeals apparently to have addressed this question is the Ninth Circuit in an opinion by Judge Kozinski in <u>Agredano v. Mutual of Omaha Companies</u>, 75 F.3d 541 (9th Cir. 1996). There relying on language from the Supreme Court's opinion in <u>West Virginia University Hospitals, Inc. v. Casey</u>, 499 U.S. 83, 111 S. Ct. 1138, 113 L. Ed. 2d 68 (1991), that court decided, "We therefore hold that section [1132](g)(1)'s allowance for 'costs of action' empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 or by similar such provisions." <u>Id.</u> at 544 (citing <u>West Virginia University Hospitals, Inc. v. Casey</u>, 499 U.S. 83, 87 n. 3, 111 S. Ct. 1138, 1141 n. 3, 113 L. Ed. 2d 68 (1991), for the proposition that "the word 'costs' in a fee-shifting statute 'is to be read in harmony with the word "costs" in 28 U.S.C. § 1920'").

In other fee-shifting circumstances, not involving § 1132(g)(1) of ERISA, the Eleventh Circuit also has instructed the courts to be guided by the definition of costs enumerated in § 1920. For example, in <u>U.S. Steel, LLC, v. Tieco, Inc.</u>, 261 F.3d 1275 (11th Cir. 2001), the court was faced with shifting costs under 42 U.S.C. § 1988, and it noted that certain costs not authorized by § 1920 were included in the request. The court vacated the award of costs and remanded, saying "On remand, if the occasion to award costs arises again, the district court should closely scrutinize its

---

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

award." U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1294 n. 23 (11th Cir. 2001). See also Equal Employment Opportunity Commission v. W&O, Inc., 213 F.3d 600, 622-23 (11th Cir. 2000).

Applying this precedent to the motion at issue, the court is required to sort through the expenses claimed by plaintiff in order to separate those that are taxable as "costs" under § 1920 from those that are not. At the outset, it is clear that certain categories are properly taxable and, thus, recoverable under § 1132(g)(1). These include copying costs, postage, ordinary witness fees, and deposition costs. Equal Employment Opportunity Commission v. W&O, Inc., 213 F.3d 600, 620-23 (11th Cir. 2000). Likewise, Eleventh Circuit precedent has found travel expenses to be taxable under § 1920. See Cullens v. Georgia Department of Transportation, 29 F.3d 1489, 1494 (11th Cir. 1994)("[T]ravel expenses are appropriate expenses under § 1920 to the extent they are reasonable."). In this case, however, the court agrees with defendants that Mr. Jenkins' claim for $600 as a $200 a day *per diem* for travel is insufficiently detailed to determine whether it is reasonable or not. Consequently that claimed expense will not be allowed. Other itemized travel expenses do not appear to be contested by the defendants and will be awarded as a recoverable cost.

Not so clear is whether charges incurred for computer-assisted legal research, such as use of WestLaw or LEXIS, is a taxable "cost." The courts have split on that issue, some holding it to be a taxable cost, others holding it to be part of the attorney's overhead and, thus, covered by the awarded attorneys' fees. Compare Invessys, Inc. v. McGraw-Hill Companies, Ltd., 369 F.3d 16 (1st Cir. 2004)(holding computer-assisted legal research charges to be recoverable "costs") with United States for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Construction Corp., 95 F.3d 153 (2nd Cir. 1996); Haroco, Inc. v. American National Bank & Trust Co. of Chicago, 38 F.3d 1429, 1440-41 (7th Cir. 1994); Jones v. Unisys Corp., 54 F.3d 624, 633 (10th Cir. 1995)(all

-13-

holding that computer-assisted legal research is not a separate taxable cost under § 1920).  Looking strictly to the language of § 1920, however, as this court apparently is required to do, there simply is no mention of computer-assisted legal research or any charges associated with the use of a computer database as a taxable cost.  This, of course, is not surprising as § 1920 was drafted by Congress long before the widespread advent of computers as tools of the legal profession.  Nonetheless, absent some statutory authority for shifting the expense of computer-assisted legal research, the court may not do so and it will be disallowed.

Finally, two other expense items appear in the exhibits submitted by plaintiff that are in the nature of fees for expert witnesses.  In Mr. Jenkins records is an October 31, 2003, charge for $180.00, described as "Cost for medical update from Peggy O'Steen, Licensed Professional Counselor."  Similarly, Mr. Medley's expenses include an undated entry for $150.00, described as "Riverbend Mental Health Center (Dr. Mumford sworn statement)."  Under 28 U.S.C. § 1821, taxable witness fees are currently limited to $40.00 per day.  Because "costs of action" recoverable under § 1132(g)(1) are limited, both as to kind and quantity, to those taxable under § 1920 and other statutes, specifically, § 1821, plaintiff may claim only $40.00 each for these two experts.  Thus, the total of those two claims will be reduced from $330.00 to $80.00.

In summary, all of plaintiff's claimed costs are reasonable and allowed, with the exception of charges for computer-assisted legal research and the $600.00 travel expense claimed by Mr. Jenkins.  Further, plaintiff may claim only $80.00 of the $330.00 itemized for two expert witness

statements.  Deducting these expenses from those claimed, plaintiff is entitled to recover "cost of action" in the amount of $4,387.88.[6]

The total attorneys' fees and costs to be awarded to the plaintiff from the defendants is $71,826.25 plus $4,387.88, for a total of $76,214.13.


II.  <u>Interest on Delayed Benefits Payments</u>

Plaintiff also seeks an award of "prejudgment interest" for the loss of use of the money payable to her as disability benefits from the time she first sought those benefits to the date they were finally approved, some four years later.  Defendants assert that  interest on such *delayed* benefits payments is a "legal" remedy, not an equitable one of the type available under § 1132(a)(3)(B).[7]

Prior to 2002, precedent in the Eleventh Circuit recognized plainly that prejudgment interest on wrongfully denied benefits was allowable as part of the plaintiff's equitable remedy.  <u>See Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama</u>, 41 F.3d 1476, 1484 (11th Cir. 1993).  The United States Supreme Court's 2002 decision in <u>Great-West Life &</u>

---

[6]   The original amount claimed by Mr. Jenkins was $3,962.40.  From this is deducted the disallowed $600.00 *per diem*, $140.00 for the expert medical update, and $341.09 in computer-assisted legal research, leaving a net of $2,881.31.  Mr. Medley's original cost claim was $1,650.35, from which is deducted $110.00 for the expert witness statement from Dr. Mumford and $33.78 for computer-assisted legal research.  This leaves a net of $1,506.57.  Adding together the two net figures results in a total of $4,387.88 in allowable costs to plaintiff.

[7]   The parties agree, as they must, that § 1132(a)(1)(B) as a basis for an award of interest on delayed benefits is not applicable to this case as the benefits now have been paid to plaintiff without the necessity of entry of a judgment.  Consequently, in the absence of a judgment awarding benefits to the plaintiff, the court has no occasion to consider whether interest is simply part of the benefits awarded by the judgment.  <u>See Flint v. ABB, Inc.</u>, 337 F.3d 1326 (11th Cir. 2003).  Rather, this case now involves an independent claim for interest on *delayed* benefits, as was the case in <u>Flint</u>.  Any relief that may be available would come under § 1132(a)(3)(B) as "other appropriate equitable relief."

-15-

Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 151 L.Ed.2d 635 (2002), raised

new doubts about the availability of interest as an "equitable" remedy for delayed ERISA benefits

payments under § 1132(a)(3)(B).  The Eleventh Circuit toyed with the issue after Knudson in Flint

v. ABB, Inc., 337 F.3d 1326 (11th Cir. 2003), but ultimately did not decide the issue.  At least two

other circuits have concluded, however, that interest for delayed benefits payments remains available

as a potential equitable remedy under § 1132(a)(3)(B), viewed either as a constructive trust or an

accounting for profits wrongfully held by the defendant.  See Skretvedt v. E.I. DuPont De Nemours,

372 F.3d 193 (3rd Cir. 2004) (constructive trust), and Parke v. First Reliance Standard Life Ins. Co.,

368 F.3d 999 (8th Cir. 2004)(accounting for wrongful profits).  Additionally, another district court

in this circuit has found that interest can be awarded as an equitable remedy.  See Cheal v. Life Ins.

Co. of North America, ___ F.Supp.2d ___, 2004 WL 1822370 (N.D. Ga. 2004).

  Although this court is inclined to believe that interest on delayed payments, however one may

describe it, is a legal remedy, the court need not reach the issue because, even assuming it may be

available as an equitable remedy, plaintiff has failed to present sufficient evidence to warrant such

an award.  Interest, in the traditional sense, was intended to *compensate* the plaintiff for the lost use

and time value of money.  Viewed as compensatory, there can be little question that interest on

money owed under a contract is a legal, not equitable, remedy and, consequently, not within the

authority provided by the "other appropriate equitable relief" clause of § 1132(a)(3).  Courts that

have found interest on delayed benefits payments since Knudson have strained to describe it not as

compensation to the claimant, but as an equitable disgorgement of wrongful profits retained by the

ERISA entity that wrongfully delayed payment.  It has been described as an accounting or as a

constructive trust, both theories assuming that the delayed ERISA benefits in the hands of the payor

are, in fact, the property of the claimant and that the claimant remains entitled to the profits generated by the retention of his property. These cases reason that what distinguishes interest on delayed ERISA benefits payments from interest on money owed under an ordinary contract is the fiduciary nature of the ERISA relationship, that is, when ERISA benefits are wrongfully denied or delayed, it is not just a breach of contract, but the breach of a fiduciary duty.

Assuming in this case that the reasoning in Skretvedt, Parke, and Cheal is correct, the assessment of what money and how much money the ERISA fiduciary must pay the claimant for delayed benefits is no longer a simple interest calculation. See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 215 n. 30 (3rd Cir. 2004). Again, the purpose of the "interest"[8] payment is not to compensate, but to require the ERISA fiduciary to give up wrongfully retained profits generated while the benefits payments were delayed. Interest is the sum of money that compensates the claimant for the lost time value of the money he should have been paid earlier. As an equitable remedy, however, its purpose is not to compensate, but to strip the ERISA payor of the wrongful profits it realized by using the money during the time it delayed payment to the claimant. Thus, the focus is not what is fair compensation to the claimant, but what wrongful profits, in fairness, should the ERISA fiduciary be required to give up. The determination of that sum of money is very different from the determination of "interest" due on delayed money. Fair compensation to the claimant can be set by statute or rule on a simple mathematical calculation of a certain pre-determined rate of interest over a period of time. Disgorgement of wrongful profits, on the other hand, requires the court to determine as precisely as possible the exact profits the ERISA entity

---

[8]     It really is no longer correct to refer to the payment caused by the delay of benefits payments as "interest." Rather, what is at stake is the disgorgement of the wrongful gain realized by the ERISA fiduciary.

realized from the use of delayed funds. Setting an artificial "interest" amount, which might be more or less than the actual amount of wrongful profits realized, fails to accomplish the equitable purpose of the remedy.[9] If the amount is too little, the ERISA fiduciary will have been allowed to retain some of the wrongful profits equity requires it to give up; if the sum is too much, equity is exceeded and the fiduciary is deprived of more than the wrongful profits it holds.

In the instant case, the plaintiff has not even attempted to determine the "wrongful gain" of the defendants realized on the delayed payments of benefits to the plaintiff. Instead, she argues simply that "prejudgment" interest should be paid at the rate provided in Alabama's insurance prejudgment interest statute, Alabama Code § 27-1-17(c), which is 1.5 percent per month.[10] This is wrong for at least two reasons: first, the ERISA benefits involved in this action come from self-funded plans, not insurance, and second, it does not focus on what, if anything, the defendants wrongfully gained by delaying benefit payments to her. Plaintiff has offered no evidence concerning how the money that should have been used to pay her benefits was actually used by the defendants, or what gain they realized from it. In this case, it is not at all clear that *any* defendant actually realized a gain. Kemper was the claims administrator, but its money was not used to pay benefits; BellSouth funded the STD and LTD plans. Delay in the payment of benefits to plaintiff did not result in any apparent gain to Kemper; it did not hold, retain, or use any moneys that otherwise

---

[9]    In light of Knudson, the importance of adhering to the equitable purpose of the remedy cannot be overstated. Only "equitable" remedies are allowed by § 1132(a)(3)(B), and slipping back to the convenience of simply determining an artificial interest rate is nothing more than resorting to the "legal" remedy of interest on money.

[10]    Ala. Code § 8-8-10 (1975) also provides for interest on money owed under contract at the rate of twelve percent per annum. Clearly, however, this would be in the nature of a legal remedy, not an equitable one.

should have been paid to plaintiff. Likewise, the two ERISA plans named as defendants are not trusts holding their own assets. To the extent benefits are payable under either plan, BellSouth pays them out of its ordinary corporate income. Plaintiff has not attempted to show how either ERISA *plan* gained by the delay in payment of her benefits nor has she attempted to trace the gains (if any) generated by BellSouth. Without such evidence, the court is unable to determine the "wrongful gain" realized by any of the defendants, which they should be required to disgorge. Thus, plaintiff has failed to carry her burden of proving an entitlement to this equitable relief.[11]

### III. Reimbursement of Medical Insurance Premiums

Finally, plaintiff also claims an entitlement to reimbursement of medical insurance premiums she was required to pay because, while she was denied short-term and long-term disability benefits, she could not participate in the medical insurance program provided by BellSouth to its employees and retirees. Stated another way, had she not been denied long-term disability retirement, she would have been able to participate in BellSouth's retiree medical insurance program, under which BellSouth would have paid 90% of her medical insurance premium. Instead, because she was initially denied disability benefits, she was required to pay to maintain her medical insurance coverage, which ultimately cost her more than $4,900.00. She now seeks reimbursement for the costs of these premiums she had to pay.

---

[11] The court has provided the parties with the opportunity to present whatever evidence they may have. At a status conference on April 9, 2004, all parties reported that they have no evidence other than that attached to their respective motions and briefs, and they were in agreement that the motion under consideration could be submitted to the court without a further evidentiary hearing.

Again, the question here is whether ordering such reimbursement is a "typical" equitable remedy within the meaning of § 1132(a)(3)(B). As no award for benefits has been made under § 1132(a)(1), this cannot be considered simply part of the benefits she sued for in her original complaint.[12]   Instead, the court views this as a request for a classic legal remedy.  Plaintiff claims, in essence, that she suffered monetary damages as a result of defendants' breach of contract arising from their refusal to award her disability benefits, those damages being more than merely the loss of the benefits themselves, but also the costs of insurance she was required to pay. "Reimbursement" of the costs of insurance is nothing more than a claim for consequential damages flowing from the breach.  She is seeking to be made whole, and while that is understandable, it is "legal," not equitable, in nature.  Although it does not seem fair for plaintiff to have to bear this cost, § 1132(a)(3)(B) authorizes the court only to award "other appropriate equitable relief," and because her claim for reimbursement actually is a claim for legal damages, the court has no authority to award it.

## Conclusion

In summary, the court finds that plaintiff is entitled to be awarded the full attorneys' fee she has requested, but not "interest" on her lost benefits nor reimbursement for medical insurance costs she was required to bear during the time her disability benefits were denied.  A separate order will be entered.

---

[12]   The court assumes that, now that she has been awarded disability benefits, that plaintiff also is participating in BellSouth's medical insurance program.  If not, she may be entitled to relief compelling BellSouth to allow her participation.  What is at issue here is not whether she can be awarded the present benefit of participating in the medical insurance program, but whether she should be reimbursed for costs she incurred in the past.

-20-

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this the 24th day of August, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE